May it please the Court, George Leon representing the United States. Your Honor, this case involves basic principles of contract law and basic principles of fairness. Promises must be kept. Are you reserving time? Oh, excuse me, Your Honor, may I reserve three minutes for rebuttal? Yes. Thank you very much. I'm not used to being on this side of the aisle. I know. It was surprising to see you there. That promises must be kept, that remedies must be provided, and that sauce for the goose is sauce for the gander. And which is the government? In this case, the goose or the gander? In this case, the defendant repeatedly and in multiple ways breached the plea agreement. When the government breaches the plea agreement, the remedies are provided, including specific performance. The courts of three of the circuits have held when the defendant breaches the plea agreement, the government is entitled to the equivalent remedies, including specific performance. I have to ask you a basic question. Yes. Isn't the government in a different position than a defendant in as much as the government comes into criminal cases and into the plea agreement stage with all the marbles, and the defendant comes in with almost nothing? So is it really right to say what's fair for the goose should be fair for the gander? The government doesn't come in with all the marbles, Your Honor, because the defendant has the ability to force us to go to trial. Which is constitutional. Right, which is indeed a constitutional right, but we simply lack the resources to go to trial in every case. The defendant knows that by plea bargaining with us, he can obtain concessions. And the Supreme Court has recognized that as the essence of plea bargaining, and the defendant cannot say, I entered into this plea bargain, now I'm not going to keep it. The defendant's choice is to accept the plea bargain or to negotiate a different one or to go to trial. Well, I don't want to deviate from the language of the agreement, and I'm sure we'll all get to that, to enter into an area of policy. Isn't policy important here in terms of how this court and how a district court regards deviations by either side from an agreement that has been entered? That is to say, if we do not apply essentially the same rules to both sides, might that not have a corrosive effect on the entire process of entering into plea bargaining? I agree, Your Honor. Not only a corrosive effect on the integrity of the courts, but also an effect on the ability of plea bargaining to resolve cases, because the whole premise of plea bargaining is that the promises will be kept. If the promises are worthless, nothing will be exchanged for them, and the promises of worthless agreements won't be made. But you say in your brief, well, what he could have done was make an open plea? Yes, Your Honor. Tell us about that. Both my colleagues were trial judges, but I was never a trial judge. A defendant is free to walk into a district court and say, I will plead to the charges brought against me without the benefit of a plea agreement. In that instance, both the government and the defendant are free to argue for whatever sentence they see fit. But he doesn't get then the three levels or three points for acceptance of responsibility, or does he? I think that would be a matter of argument. Certainly he would claim it, and we might find content that we think contradicts it. But it would not be agreed to. The government would be free to argue against it if it had grounds to do so. Here the government gave the defendant substantial sentencing benefits. It reduced his statutory mandatory minimum sentence by 15 years in this plea agreement. It promised to stick by a stipulation to acceptance of responsibility that reduced his sentence by five or more years, his guidelines range by five or more years. And it in fact stuck by that, despite the fact that the defendant had grossly misbehaved after the plea agreement was entered into. Mr. Messerego, can we get to the agreement? As I agreed to stipulation, the parties agreed to an offense level of 33. But the history computation was left open for both parties to argue about. Is that correct? Your Honor, it's correct in part. The computation was left open for the parties to argue. People who don't have a stipulation as to the total guideline calculation. That's correct, Your Honor, again in part. The computation under 4A1.1 of the criminal history was left open, and the parties were free to argue that. But the parties agreed not to depart from that computation once it was reached. And there's no way this defendant ever could have gotten 120 months if 33 is the agreed upon offense level. That's correct, Your Honor. Because it's below every possible range that could come across that 33 line. That's correct. And that highlights the other way in which... And the agreement was not to ask for a departure. Not to ask for a departure, not to agree to be sentenced within the range, not to ask to be sentenced outside the range, and to agree the range was reasonable. But, Mr. Leone, the stipulation says the parties reserve any right they may have under the statute to appeal the sentencing court's determination of the criminal history category. Yes, they do. Well, if the district court decided that the category should be a 1, would not the sentence have been much below what the defendant was asking for? If the district court determined in its computation that the sentence was a 1, the government and the defendant would be free to appeal that. And the defendant would have no incentive, but the government would be free to appeal that issue, yes. Now, my question is, it seems to me that the government is saying the district court must follow what you have put together with the defendant. And that's the way I read it. And I don't think that the U.S. Attorney's Office has the right to tell the district court what the sentence should be.  I thought it specifically said that the district court was free to do whatever it decided. Yes, we don't think we have that power. We didn't try to exercise that power here. We will not bargain. All right, all right. Now, just let me add here, if the district court is free to come up with a sentence, it seems to be just and reasonable. Where do you stand here? Are you saying that simply because the defendant argued for a particular sentence that the district court was swayed by that argument? Your Honor, first, yes. The district court clearly was. Do you really believe that the district judge left his own discretion behind and was overwhelmed by the argument of the defense counsel? No, I don't think that's the issue. The reason why, no. No, I think it is. Well, I'm trying to get to both parts, Your Honor. The reason why, no, is the district court not only went to exactly the sentence the defendant was asking for, it repeatedly said that it was going to that sentence based on the arguments of the defendant. The government knows it cannot commit the district court to a sentence in this type of plea, but it also knows that its plea agreement, what we bargained for, is what the defendant can argue, or what we can argue. And he argued things he had promised not to argue. So the issue here, as the Supreme Court said in Santabella, as this court has repeatedly said, is not even whether the district court, although it did, listened to the defendant. The issue is did the defendant breach his promise? The defendant explicitly argued 4A1.1.3. Did he not? 4A1.3, yes, Your Honor. And what is 4A1.3 headed? What is it called? Departure. Downward departure. Downward departure. It's the subtitle of the title. Yes, it's departures for overstatement or understatement of criminal history, in this case overstatement. Of course he did that based on the overrepresentation of criminal history, which was left open. No, the agreement says any departure. The parties agree that neither party will make any departure. And this is clearly labeled in the guidelines as a departure. The district is referred to as a departure in the course of these proceedings. You have a contradiction in your stipulation that there will be no argument for departure, and that you do allow for a departure on criminal history. No. Your agreement is ambiguous. I don't think so, Your Honor, because the agreement provides that there's two stages in criminal history. When you sentence a defendant, the first thing you do is figure out what the calculation is under 4A1.1. You add together the points, and you come up with a criminal history category. The second thing you may do is consider a motion for a departure under 4A1.3. Our agreement left the first part of the process open to the arguments of the parties, but by barring any departure, barred the parties from engaging in the second part of the agreement, either us or them. And I think that's a constant refrain that the court should consider. If the government had come into this sentencing and moved for an upward departure, claiming that the defendant's criminal history was overstated, the defendant would have been in this court in a heartbeat claiming breach, and this court would have reversed. And we would have reversed. That's correct. It's true that the government, as a draftsman, has things construed against it, but once you determine what it is, you apply it to both sides. And in an even-handed provision like this, it means what it says. Mr. Leamy, what do you want? Suppose we agree with you, and I certainly can't tell what my colleagues will say, as you can tell from the questions, but suppose we agree with you and we have to send it back. Are you asking us to send it back to a different judge? We're asking this court to follow its precedents, to grant the government the right of specific performance, which is here basically the remedy that's still available to us. For us to grant specific performance, we're going to have to demand from the court to determine which of the two remedies should be pursued. Because I'm not entirely sure our line of cases has been consistent over time in that regard. This court's line of cases runs basically as follows. The general rule is if a party breaches, the court demands to the district court to determine which of the two possible remedies is available. Specific performance or rescission of the plea agreement for defendants. But didn't you ask that we agree that we grant specific performance? We've asked that we grant specific performance, because this court's jurisprudence also does that in certain circumstances. Well, we did it in one case, for example, where the sentence had been so substantially served, like eight months or so, that really there was only one course of action we reasonably could take. Well, this court has done it actually in a number of situations. It's done so when the sentence has substantially been served, which is in a way a form of performance of promises. In this case, the United States has performed all of its promises. And the court's noted that as another reason, and the other circuits have noted, if the government's basically performed all of its promises, specific performance is the appropriate remedy. This court has also looked to the preferences of the parties for specific performance, because specific performance is the lesser remedy. And this case illustrates that very well. We weigh those preferences if we determine that we have a breaching party. Are those preferences to be weighed? Or are the preferences of both parties to be weighed, or only the preference of the innocent party? The preference of the innocent party. Otherwise, the defendant could worry the government could breach and then go back to something that was perfectly contemporary. Excuse me, I never got an answer to my question. I'm sorry, Your Honor. My question was, what are you asking? I asked you whether, if you want to remand, let's assume that you want to remand and that it's the district court that has to decide what to do, not us in terms of specific performance or withdrawal of the guilty plea. I don't think we would order the district court to allow withdrawal of the guilty plea. Are you asking that it be remanded to a different judge or the same judge? Well, Your Honor, we were asking for two things. One, that it be remanded to a different judge. A different judge. Well, let me make this clear. See if my time is up. Can I answer your question? Sure. This court has actually ordered specific performance before a different judge three times. Yourself in Botoraco, the court in Rivera most recently, and the court in Nolan Cooper. And the reasons were either that one of the parties had substantially performed, that the other remedy was unavailable to the party, or that the party had a preference for the lesser remedy of specific performance. And those are all present. At least two of those three are present here. We have a preference for the lesser remedy of specific performance. I suspect the defendant does as well, because our alternative is to increase the statutory mandatory minimum to 25 years. So what are we supposed to do? Well, we're asking you to do. I want to know which judge. Because we're asking you to remand for specific performance, we're asking you to remand, as this court's precedent uniformly requires, to a different district judge. If you were remanding to just have a judge decide which one this would be, I believe this court's precedent, which of the two remedies would apply, I believe this court's precedent is to send it back to the same district judge. But if he finds a specific performance is required, he remands. He sends it over to a different judge. We think because we've asked for the lesser remedy, because we've already performed our promises, we don't need to take the time at that stage. You should send it as you've done in three cases before. Have we ever done that before? Yes, Rivera, Nolan Cooper, and Van Aracko. But not for the government. You've never had a case for the government, Peter, as far as I can tell. I know. Judge Wise, do you have any more questions? Yes. This is a current case, as I understand. Yes. Have you heard, of course, that the sentencing commission has said that they're going to reduce the crack-cocaine ratio? And as effective as of November 1st, as our calculations indicate, the offense level will be reduced by two points. So instead of a 33, you would be facing a 31. Would you agree, or would you rather not take a position on if there's a resentencing that the level of 31 would apply rather than the 33? Your Honor, I believe that the guidelines require that if a case is remanded for resentencing, it's remanded using the same guidelines book that was used at the original sentencing so that neither party benefits from changes. Do you believe that the sentence is reduced? I think, Your Honor, if the commission were to make these changes retroactive, which, as I understand, the commission has not decided yet one way or the other to do, then I think they would apply. But I believe, Your Honor, and I've not researched this, and it's not crucial for the court to determine at this time, that if the crack cocaine changes are not made retrospective, then the court should apply the same book it applied when it sentenced him originally. Of course, the government could always unilaterally offer to revise the agreement in light of change in circumstances. The government could, and the government understands the court's suggestion. We could move that by deciding, I guess, before November 1st. If perhaps so, Your Honor. According to NARA calculations, the range with the amendment that the commission proposes would be 121 months lower limit. So you're talking about 120 months versus 121? Your Honor, I haven't done the calculation. I salute you for forward thinking. But even if that's true, there are larger principles at stake here. The larger principles are whether plea agreements are going to be honored and whether the government has a remedy when they are not. And so we ask this court. I'm still bothered by Booker's effect here. As the district judge said, he was reducing the history, and then he came up with a figure of 120 months. I still don't see the necessary cause in the fact between the defendant's counsel's argument and the district judge's decision. And I think you have to show that. I don't have to show that under the President Santabello and all the breach cases in this court, but assuming that I did. Those are pre-Booker cases. No, so these are post-Booker cases, as I understand. I don't think this precedent has been challenged at all under Booker. But as the district court said to the defendant, if this were a pre-Booker plea agreement, you might have a better argument. But this is a plea agreement that was drafted after Booker. It was drafted to a deal with Booker. It refers to the guidelines being non-mandatory. It says, nevertheless, the parties agree as follows. It talks about the reasonableness of the sentence. This plea agreement, the defendant, before he got into this, knew all about Booker. It was covered in the plea colloquy. And for the defendant to come back to the district court as he did and say, oh, well, after Booker I rethought this is unsustainable because it was post-Booker all the way. And because the defense counsel's other excuse was that he had consulted with the defense bar and they told him to make this motion, and frankly we are seeing these sort of things happen more and more often, the United States respectfully requests that this court reverse the case in a published opinion and remand for specific performance before a different district court judge who, judge-wise, can take into account all the arguments that you have been mentioning. It probably raised a non-inviolation of the plea agreement. Thank you. We'll hear you again on rebuttal. Thank you very much. Thank you. Mr. Arleo. Good afternoon, Your Honor. Frank Arleo for me happily. Quentin Williams. Once again in an unfamiliar position. Yes, happily I guess sometimes. Your Honor, let me address the criminal history issue first because I really see that as sort of a horse of a different color and I want to expound a little on what Judge Wise pointed out. Let me ask you, the district court can always, picking up Judge Wise's question, always sentence according to its discretion. What it thinks it should, I'm also hearing. So why shouldn't we read this case as saying, well, the district court just decided to give X as a sentence. You think we should do that? I do, Judge. If I can harken back, and I will definitely come back to answer your question. Okay. Because with regard to the 4A1.3 argument, the government started out by saying this case is a matter of contract interpretation, it should be decided under principles of contract law. The government drafts the contract here. And if you look at the plea agreement, paragraph 6 talks about the offense level. Paragraph 7 then talks about not going to make any departures and then comes back to the offense level saying the offense level of 33 is reasonable. Judge, I've been doing this for a pretty long time and I have never read those paragraphs to mean that I couldn't address the criminal history category. Well, wait a minute. But it very specifically says that the defendant is not going to argue for a departure. Upward or downward. And the defendant did. Why isn't that a plain breach of the contract? And, Your Honor, again, my explanation is because it's framed in the context of an offense level. I understand 4A1.3, if you open the guidelines book, it's entitled departure. No question about it. I don't dispute that. But when you negotiate these and you even try to mention criminal history category, the government says that's up to the probation department. We're not going to deal with it. It's not part of the agreement, in effect. Well, I have seen agreements where they agree to the offense level. Are you suggesting they never agree to the offense level? No, no, no. Criminal history? Are you suggesting they never? I've never seen one, Your Honor. I have to disagree. I think I've seen three agreements. The reason, Your Honor, is they usually don't know. Probation does the investigation, and we're all surprised because sometimes your client doesn't tell you their information. I've seen them that say criminal history is one, criminal history is three. I'm amazed. In a plea agreement. I've never seen it. I think I have. In any event, Judge, so that's why I parsed that out, though. I have always argued, Judge. I confess that I've signed these agreements and then gone in there and argued that the over-representation portion of it. But the agreement didn't say you wouldn't argue against the departure, did it? It says I would not argue against any departure. Absolutely. Well, the government chose to bring this one up to our attention. I understand. My point simply is if departure does include criminal history, and I think it's ambiguous, and I latch onto the word. Go back to the language that Judge Smith was just mentioning. Any departure. What's ambiguous about that? Because the preceding paragraph talks about the offense level. Paragraph 7 talks about departures and then comes back at the end of the paragraph to say, we further agree that the sentence within the guidelines range that results from an agreed total offense level is reasonable. So if you read it in the context of those two paragraphs, that's my point. And I thought it was ambiguous. And let me take it a step further. When you read the sentencing transcript, Your Honor, that's why I raised that with Judge Greenaway first. And after we decide that, I then say, Judge Greenaway, it's now a couple of months post-Booker. I don't want to step over the line. And I want to make that clear here. There's certainly no intent by me to thumb my nose at the agreement and say, I'm going to sign this, and then I'm going to waltz into court and argue something completely different. I raise it with Judge Greenaway, and I say, Judge, I'm a little confused. I've consulted other defense attorneys. I'm not sure how far I can go in this hearing. I know I can argue the 3553A factors, but I can't say, you know, for fear that the duck is going to come out of the ceiling,  why not just argue the 3553A factors, and why not just go only so far as to say, as to note your awareness that the court has the discretion to sentence pursuant to those and leave it at that? Why file a motion, a sentencing memorandum, that tracks the specific section that is titled downward departure? You're correct, Judge Smith, and that's why when I got to the sentencing hearing, after going over the memo, I said to Judge Greenaway, I'm a little concerned about maybe stepping over the line, and Judge Greenaway on page 15 of the transcript says, so you really should just argue mitigation and see what the court will do. And you didn't do that. In other words, he told you what you could do, what he read to mean what you could do, but you didn't. And I think, Judge, if I'm looking for anything here at all, because I guess... I mean, we don't slap your head, but you didn't do that. And, Judge, I think after 25 years, I'm pretty good at reading the tea leaves, so I guess what I'd be looking for is some guidance, because now what happens in these courts at all sentences is, I guess we can come in and argue 3553A ad nauseum, as long as we don't couch it in terms of any type of departure or the new parlance of variance. But that was the language. It says the parties agree not to seek or argue for any upward or downward adjustment, adjustment or upward or downward departure not set forth herein. The parties further agree that the sentence within the guideline range that results from the agreed total offense level of 33 is reasonable. Correct, Your Honor. And I would submit that I did then call to the attention of the court all the factors. Yeah, but... And essentially what happens now in this type of situation is you do the factors. Maybe someone under the guise of asking the court to sentence at the lower end of the particular guideline range, but sort of with your fingers crossed behind your back that the court is going to do its own booker variance. Mr. Alejo, you indicated a little bit ago that what almost always happens or what usually happens is you don't know for sure what the criminal history is going to show until the PSR is done by the probation team. Yes, sir. But there was one prior offense here listed in the PSR, wasn't there? I think there were more. Actually, there was a felony 13 years ago and then two disorderly... I don't have the PSR in front of me. I was looking for it. I have it. He had a felony 11 years prior to this and then two misdemeanors. There were no surprises here. Well, you knew what the range was. Well, Judge Smith, you have to remember when you say no surprises, by this point I have a probation report. If you're asking me prior to getting that report, I probably couldn't answer that question because you interview clients. There are clients who think probation is not a conviction. You will talk to clients and say, well, I wasn't convicted. I got probation. You have to explain to them that it's a conviction. You've never been suggesting, though, have you, that there was some kind of miscalculation here of the criminal history, have you? No, no. The argument was purely over-representative. Absolutely. But, again, once I got the pre-sentence report... We'd be dealing in a different realm here, would we not, if you were arguing, that the district court just miscalculated or the probation office miscalculated and the district court did its work? Yes, I would agree with that. I would agree with that. But, again, again, I didn't think that this plea agreement foreclosed me from arguing that. And if the court sees departure as departure, I understand that. But I think in the context, I think it is ambiguous, and I agree with Judge Weiss on that. To the question that I asked Mr. Leal, assuming, and, boy, you can't assume that at all, assuming that we are not persuaded and that some of us are not persuaded and that the end result is a remand, what's your view as to same judge or different judge? Well, Judge, it's interesting. In the government's brief, they say it would be... They use the term awkward. It would be awkward to send it back to Judge Greenaway. I don't think it would be awkward at all. I think... And Judge Weiss made the comment that maybe Judge Greenaway was not overwhelmed by my arguments but really had intended to issue a Booker variance on his own. Well, you would have been well served to follow Judge Greenaway's suggestion that you just argue 3553. And, Judge, what I don't want to happen here is I certainly don't want the client, the defendant, to be harmed because if he was going to get that Booker variance regardless of my arguments anyway, now to send it back to a different judge, he loses the benefit of having the judge who took his guilty plea, was able to watch him, was able to listen to him, and now does it go to a different judge where he potentially could be harmed because his lawyer stepped over the line? Does Sandoval and McQuire think it would go to another judge? I don't think that line of cases goes that far. I think... I read the precedent, but I think it has to be a little bit case specific. And when you read a transcript here where Judge Greenaway seems to be hinting that he's inclined to give the statutory minimum anyway despite my arguments, then I think out of fairness it should go back to the same judge with whatever remand instructions the court deems necessary to perhaps tell Judge Greenaway, put on the record clearly why you're doing this. Is it counsel's arguments or were you going to grant a Booker variance on your own? Is it realistic in this case to think that your client would want to withdraw the guilty plea with all the advantages that that went to him? I would have to say no, Judge. I don't know what's on his mind. It took a while to get a plea agreement. He had some issues that I won't go into here about the search and things of that nature, but ultimately he agreed to plead and admitted his guilt. But no, I agree that going to trial may not be in his best interest. But as I said, on the flip side, I don't want to see him harmed. No, we understand. 121 months isn't too terrible compared to 120 months. No. No. We're open for retroactivity. Yeah, well, but even with retroactivity, it would just be, according to Judge Wise's calculation, one month. Is that right? Well, if he's sentenced at the lower end of the range. I mean, he could be sentenced in the middle or at the top. He could be sentenced anywhere in that range, assuming that he ends up in that guideline range. But I have written opinions saying one month is one month, and if he didn't have to serve it, he shouldn't have to. I remember that came up. Do you have, Judge Wise, do you have any more? I have no other. Judge? I'm a very big fine man. Okay. This is your last shot at him. Thank you. Did you have any more? I didn't want to cut you off. No. You still have a couple minutes. No. I mean, it's nice to hear you, but. Mr. Leon, do you have anything to add in your three minutes? Very briefly, Your Honor. First off, I've already argued why the 4113 departure was covered by any departure. But I would point out that even if that he will write, there are three other breaches that are going on here in this case. The same thing has to happen in this case. A remand for resentencing for another judge. As far as the defense statement. What are the three other breaches? Are you going to tell us right now? Sure. I'm sorry. Very quickly, the making of a second departure motion, the Chapter 5 departure motion, the making of a variance motion, and the specific request for a sentence of 120 months. Those are all breaches to believe in. The defense counsel mentioned what the counsel will do in the future. Will they argue for mitigating and keep their fingers crossed behind their back? I hope not. I'm sure you don't want the government to do that either. In fact, what I suggest. We don't let the government do that. Right. And what I suggest to the court is that the proper rule there, this court has extensive case law on what the government, when it's the government's breaches, what language crosses the line. And that same case law should be applied. So apply to defense counsel. They can get their guidance from there. Is it fair to ask a defendant not to ask for a departure? Just fair. If he's getting substantial benefits in employee remand, he made the promise. Yes. Yes, entirely. Otherwise, why should we give him these benefits? Well, because you're relying on the district court. You're giving him the benefits because he agrees not to go to trial. And as you say, you don't have the resources to try every case. That's true, Your Honor. We do get something for it even if we're totally schnookered in sentencing, but we prefer not to be schnookered. I don't know what schnookering means. The government got schnookered in sentencing? I've just said the same thing. I've never seen that. The government got schnookered. Would somebody define it for me? Schnookered? Yes. Taking advantage of, Your Honor. Yeah, that's because you don't drink too slow. That's true. The fraud, essentially. I'd like to point out, and I have great respect for my opposing counsel, the issue does not turn on his good faith in this issue. This court has made clear a good faith inadvertence. They are not excuses. You want us to protect him. Yes. I just want to very quickly, on whether a defendant should be allowed to withdraw his plea, I don't think the court needs to reach this issue in this case, but I don't think that's a remedy that's available to the defendant when he's the party that breaches. Yeah, and I don't know that. I think we understand realistically that that's not going to happen. And lastly, as to why this would be unfair to send back to Judge Greenway besides this court's precedent, you can't put the toothpaste back in the tube. But Judge Greenway's heard all of these arguments. He's put in an incredibly awkward position. Oh, come on. District judges, trial judges, make decisions all the time in non-jury matters. That's true. They have heard evidence that would otherwise not come in before a jury, and we trust district judges to make those decisions. Scott has a foreign district judge. He is a very biased source. This court has carved out breaches of the plea agreement as a special situation where that rule does not apply. You know, what would happen if New Jersey has alternative district judges to whom to send this if that were required, but there are districts in this country where there's one district judge. Now, is the government going to argue in those districts that you have to bring in a judge from hundreds of miles away? Your Honor, I frankly don't know what they do. I can't think of a district where that's true. Oh, there are lots of districts in this country. I don't know what the government would argue in that case, but in this case, obviously, there are 14 other judges to which this can be sent, and we are content on the random selection. Thank you very much. I appreciate it. The court would remand for resentencing before another judge. Thank you. It's a very interesting case and it's been well argued. Thank you, Your Honor. Now, I'm going to have to ask everybody to please leave the courtroom because we're going to conference in the courtroom with Judge Wise because we can't conference with him in chambers. We could go to Bedford. Well, we could. I have had a case in which they pulled it downstairs from me, but I think you won't bother. I did an interview. Thank you, everybody. Thank you, Your Honor. Thank you.